May it please the court, Robert Lance, I'm counsel for the appellants William Shane Pertl and Mindy J. Montgomery. At this point, if I could reserve two minutes for rebuttal just in case. Thank you. Your Honor, this case really centers on the clerk's entry of default entered against Mr. Pertl and Ms. Montgomery six months after the underlying case, the federal district court case was removed from Superior Court of Los Angeles County. The subsequent denial of a motion to set aside default then led to a default judgment in this matter. It's in that lens that I'm asking the court to review this. We had received notice from the client that he apparently had been served with a number of documents in August. I had entered my appearance in certain cases in Kansas that were pending against him. This is one of several cases brought by Gemcap and or other creditors against Mr. Pertl and certain entities he had been running. The evidence at trial... Excuse me, can I ask a question? Was Mr. Pertl unaware of this case? No, he was aware of this case. And why didn't he answer? Go ahead, Judge. I'm sorry. If he was aware of the case, why didn't he answer? Several things. Several cases were filed at about the same time. In November, he stipulated to receivership being appointed in Kansas. Thereafter, in January, he had also filed for Chapter 11 bankruptcy relief. In fact, part of the reason for the... As opposing counsel has pointed out, apparently there were certain communications but at no point in time had either an answer been filed or an entry in the case been filed. Was the bankruptcy proceeding personal as to him or was it as to his entities? It was personal as to him. Why wasn't there an automatic stay of this case? I would presume there would have been. I'm actually a bankruptcy attorney primarily and I got involved... Well, then you know about automatic stays. Yeah, so what I was going to say is my opinion is during the time period in which they're discussing Mr. Lazo and also service, it would have been at the end of January, which was approximately the time that the bankruptcy case was in effect. The bankruptcy case... When was the bankruptcy case dismissed? It was dismissed at the end of February and it was dismissed upon a stipulation with GEMCAP. Right, so the automatic stay went away when it was dismissed, right? Yes. Yes, it did. Maybe that's the answer then. Okay. So, I want to make sure I understand. Your clients... But just use Mr. Pertola as one client. Your clients get personally served with the original complaint before the case is removed, right? Before the case is removed, you mean to the federal district court? Yes. I believe they were served with the... I believe that with the case in the Superior Court of California, is that what you're asking? I'm sorry. They were served with the original summons and complaint on December 17th, 2018, correct? I believe so, yes. And then the case was removed? Yes. To federal court. To federal court. And among other things, your clients file a declaration when the case is being removed saying, we were sued in state court and we want to move it to federal court. They file declarations. I don't believe they did. I believe everybody else did. Yeah, I think they did too. They acknowledged the existence of... They did acknowledge, yes. Okay. I don't think that they... Yeah, John... I just want to work through the facts for a second. Yeah. And then when they get a 15-day extension to answer the complaint once the case is removed? Yes. They don't answer it? They don't answer it. They file bankruptcy instead. Well, no, they've already filed bankruptcy before. That gets dismissed. But after the dismissal, they're served again personally with the amended complaint, correct? Yes, but not until August. Yeah, I understand. And they don't answer that either? No, they don't. Okay. Not timely. Not timely. Anyway, they try to move to set aside... So given all that, what's the excuse? Why should we set aside the default? Well, at least with respect to the August summons that occurred in August and the affidavits that went with that, it indicated that that was their service date. And, Your Honor, when the client did receive this, and it's in the underlying pleadings in the district court matter, the pleadings were received and they were about an inch and a half deep. And the summons was contained in the middle of the pleadings. But they had been provided by email six months before with the amended complaint, declined to accept service of it at the time. So they knew that there wasn't any doubt that they knew they were being sued and an amended complaint was being filed. They just didn't answer it. So what's the excuse for not answering it? Well, Your Honor, a couple of things. And that goes to the stipulation that was entered into in the bankruptcy case, dismissing the case. Now, if the court looks to that, it indicates that the claims now construed correctly or not, my client was under the impression that because the RICO claims were not going to be pursued, that the case in California was effectively stayed pending certain things that were going on. In addition, the other parties in that case moved to withdraw the case from California, the federal district court in California, to Kansas. Now, I will acknowledge my client also signed something with respect to Bank Central, I believe, motion to transfer the venue to Kansas. Again, at this point in time, he was not represented in this case. He was not in this case, the District of California case. Mr. Lazo, though he had communicated, is just a bankruptcy attorney in Kansas and had never entered his appearance in this case. So Mr. Purtle was acting essentially on his own in accompanying orders. In a way, yes, of course, if the lawyer has not made an appearance in California, but that does not mean that Mr. Purtle was without legal advice. I mean, if I'm Mr. Rizzo, if I'm the Kansas bankruptcy attorney and I'm representing Mr. Purtle, I think it's malpractice if I don't ask him, well, what about this case out there in California, because this is relevant to what's going on here. I can't believe that he was without legal advice as to what was happening in California. Yeah, and I don't, on that I don't know the answer. I do know that some communications have been exchanged, and I believe counsel would acknowledge this, is that at some point in time Mr. Lazo said he had not been engaged to be employed in the California case. Realize he's also not licensed in California, so he would have had to obviously seek global counsel. I'm sorry. No, no, I'm just agreeing with you, that's fine. Okay. Yeah, so it's our opinion that they didn't engage in culpable conduct by intentionally failing to answer. Effectively, he was opposing. Can I ask you to address whether your clients have a meritorious defense to the breach of contract claims? Because if not, that would be an independent basis for just not setting aside the fault, right? Yes, so with respect to the meritorious defenses, we did list those in our answer that was attached to the motion to set aside, and also I believe to the motion, the response to the motion to have default judgment in this matter. Well, I'm sure you listed them, but I think Judge Watford's question, at least what I'm interested in is, what was the evidence that you had a meritorious defense? One of the meritorious defenses, at least with respect to the amount of damages, is that there was a receivership in place, and many of the assets in Kansas, in the Kansas matter, and many of the assets were sold, including a feed yard, a feed lot, and certain pieces of equipment. To date, the receivership, just as an update, and this is not in the record, but the receiver filed his report in Kansas, and the case was closed about a week ago in Kansas. Did your clients challenge the amount of the judgment when they moved to set it aside? See, when I look at the district court record, all I find is something that says you should set aside the entire judgment. Did they go in and say, well, it shouldn't be $19 million, it should be $14, or $15, or $13, or $12? We did not specify, no. The concern here, and I'll just express what our view of the case is, is the clerk's entry of default put things in motion. And in that, when the clerk's entry of default entered, one of the hurdles that you run into when you're somebody who's from out of state is you have to get local counsel to appear in the district court. It took us time to do that. We had a conferral with opposing counsel almost immediately after the clerk's entry of default entered. We then filed the motion to set aside. It was declined because of procedural infirmities, because apparently we had done the conferral too early. The concern here is it's very difficult with an impecunious client, as counsel knows probably from their prior practice, for an impecunious client to not only engage counsel in Kansas, but in California. And to get our local counsel in place took several weeks to get that. And I'm not seeking to place blame, but when I asked about this, and this goes to Judge Watford's question, I think, your clients were represented by counsel when the default judgment was entered, were they not? They moved to set aside the default. Yes, yes. Right? Yeah. But nobody said at the time the default judgment was entered, wait a minute, even if there's a default, we're entitled to a credit for what the receiver has collected. There was no dispute about the amount of the judgment. So I'm having a hard time seeing how the district court could have found a meritorious defense if nobody told them about that. You told the judge about that? About there's a credit to be obtained. We fight about the amount of the judgment because we need to figure out what the credit was. Part of it, Your Honor, is because the clerk's entry of default entered. And the clerk's entry of default, when the judge entered his order on the motion to set aside, he made expressed and explicit findings of fraud, of willfulness, of other things related to our case. He could have simply said we have no meritorious defense and just left it at that. But he made findings that we had committed fraud. We had done things that were willful and had caused damage. But the judgment doesn't reflect that. You agree? The judgment doesn't have RICO or fraud damages. It's just the amount of loan, attorney's fees, and interest. Default judgment. But it still reaches many of the conclusions that there was massive fraud. And that was alleged, and it's alleged in counsel's brief on appeal that there has been massive fraud here. To go to what the quote-unquote massive fraud is, is related to the sale of certain cows, cattle. And Mr. Purto did, in fact, admit under oath that he had misrepresented what had occurred. And that, one, is not perjury, but it is acknowledging a mischaracterization of a past fact. That was in that case. This threatens to take you over time now. Are you referring, when you say he acknowledged something about a sale that was improper, are you talking about the sale that didn't take place to Lisa at Cargill, or are you talking about the disappearance of most of the 4,000 head of cattle? Well, the disappearance of the cattle is a different issue, but I'm talking about the sale of the cattle. You're talking about Lisa? Yeah, the Lisa. So the other concern here is with respect to the motion to set aside, I'm getting an echo. I apologize. I don't think it's me. But the motion to set aside, the concern that we clearly have is with respect to the motion to set aside, there are certain findings of fact and conclusions of law. And quite frankly, even if the judgment is based on contract going to the default judgment, there are these findings in there that would potentially make these claims nondischargeable in bankruptcy, even if it's just a contract claim because of those findings. And quite frankly, the only alternative at this point for my clients is to file bankruptcy, and they would like to be able to defend this in this setting before the district court in California. The case that was transferred is gone. It's long gone. It's being dismissed as we speak. And the venue would have to then be sent back to the bankruptcy court for reconsideration of almost all of this. And we would like it to be considered before the district court and that the issues be considered. It will not prejudice GEMCAP. They've had many venues in front of which they've appeared. So I appreciate your time, Your Honors. Thank you. I'm going to take you over by one minute here. Okay. Go ahead. What you're worried about is that when the judgment is set to be enforced and your client declares bankruptcy with respect to that, that this is going to be found to be fraud and therefore nondischargeable. Yes. And your argument in the bankruptcy court is then going to be, well, the district court here in refusing to set it aside called it fraud, but it's not binding. I mean, that's the argument. I'm not sure there's anything we can do about that to help you. No. And I would acknowledge that it will be a collateral estoppel issue most likely that will have to be dealt with by the bankruptcy court. Okay. Let's hear it from the other side and we'll give you two minutes to respond. Thank you very much, Your Honor. Hard to see collateral estoppel in a default. I'm sorry? Generally, the law is that defaults don't give rise to collateral estoppel because no issue was actually tried. I recognize that, Your Honor. Thank you, Bill. You need full and fair litigation. Okay. We're now going to hear from Mr. Adams. Good morning, Your Honor, and thank you. May it please the court, I am William Adams and I'm appearing on behalf of Appelli. I agree with my learned counsel's characterization that this appeal presents a fairly narrow question for the court, specifically whether or not the district court earned in its denial of his client's motion to set aside a default judgment and its subsequent entry of the default judgment. I also believe that based on the briefs in this case, the parties agree on what the appropriate elements would be for the district court to consider in respect to making its ultimate decisions on both of those issues. Where my friend's position and mine depart, however, is on two things. First of all, what the appropriate standard of review is in this case. And I think that the case law, including the case law cited in the appellant's brief, fairly clearly establishes that these are discretionary motions by the trial court and consequently this court should afford great deference to the discretion that was used by the trial court in reaching its determinations. Now, on the issue of the motion to set aside the default judgment, the principal argument that's advanced in the briefs by the appellants is that the district court failed to consider certain elements, specifically the culpable conduct and the meritorious defenses. And the difficulty I have with my colleague's argument is that it's belied by the judge's own ruling. Every element, the culpability, the meritorious defense or lack thereof, and the prejudiced gem cap were all specifically addressed by the court in its 10-page statement. These issues were before the court. They were thoroughly considered and the outcome is one that the appellants obviously disagree with, but that's not the standard of review. Similarly, on the entry of default judgment, there are seven factors under the idle case, all of which were specifically addressed by the district court. They were found against the appellants and, again, they disagree with the district court's determination of these issues, but that's different than whether or not the court failed to consider them. Mr. Adams? Yes, Your Honor. I can't tell from this record how the amended complaint differed from the original state court complaint because the state court complaint is not in the record. Can you tell me how it differed? Regrettably, Your Honor, I can't. I don't believe that it was a material amendment to the complaint. There were arguments that were being raised on issues of personal jurisdiction by other defendants, and the focus of the court was for several months on the issue as to whether or not it had personal jurisdiction over other defendants. The material allegations concerning the personal guarantee, Your Honor, were not changed. And the RICO claims were in the original complaint? They were, Your Honor. Okay. Go ahead. I'm sorry. Thank you. You answered my question. Can I ask you to address your opponent's argument that let's say we get past the entry of default, so they're not going to be able to contest liability, but we get to the stage of whether the default judgment should be set aside. They argue that there were contested issues as to what the correct amount of damages should be. Essentially, I think the district court basically gave your client everything it asked for. And they say, no, no, no, that should not have happened. We actually do have things to say. I guess it has to do with the sale maybe of some of the collateral by the receiver. Can you just address the correctness of the bottom line number that the district court ended up entering as judgment? The bottom line number was a calculation that was supported by the president of my client based exclusively on the loan, the applicable fees and interest, and attorney fees incurred, all of which were recoverable under the express terms of the personal guarantee. A decision was made that in spite of the fact that a prove-up or evidence could be submitted to support the court-based claims against the appellants, we elected not to do that because we wanted certainty in the figure. And, in fact, the figure was certain. To the extent that there are recoverable sums through the receivership that should be applied, those would be applied as a credit against an ultimate recovery from these appellants. But, in fact, none of that has happened because the losses in this case have well exceeded the judgment amount. And it is also true that Mr. Lance's concession is that there was no attempt to introduce to the trial court some correction or adjustment that would be necessary to the ultimate judgment amount. It was a wholesale attack on the entry of judgment in the first instance. And, again, the trial court addressed that. Unless there are other specific questions, I believe that we've covered our position, the specific elements of each of the decisions of the trial court, and the standard of review. I'm prepared to submit. Any further questions from the bench for Mr. Adams? No. Mr. Lance, you'd have to reserve two minutes. Why don't we put two minutes on the clock? All right. Thank you, Your Honors. Just to be clear, again, I think this case goes back to the motion to set aside and the ruling on that, which essentially was adopted in the default judgment. One of the things I would point out is counsel for GEMCAP did submit substantial evidentiary objections and actually objected to our standing with respect to raising a defense to the motion for default judgment. The court's probably well aware there's very little case law on the effect of a client or a party raising a defense to a motion for default judgment after a clerk's entry of default. Much of the case law says we don't even have standing to raise a defense to the motion for default judgment. That's why I think it creates this predicament that we go back to the original clerk's entry of default and the request to set it aside. I think there is evidence that we intend to defend this matter. I think that's one of the factors to look at. We wouldn't be here today if we didn't intend to defend this matter. We believe that we do have defenses. There are defenses that are not in the record that have come to my attention more recently. And perhaps those lead to other causes of action separately. But, your honors, that's where we are right now. We appreciate you all taking your time to consider this argument. And unless there's anything further, I'm complete also. Thank you. Thank you very much. I thank both counsel for your helpful arguments. Gemcap Lending v. Fertile and Montgomery submitted for decision. Thank you.
judges: W. Fletcher, Watford, Hurwitz